**Wyman Hulan PARR, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16697.**

United States Court of Appeals
Fifth Circuit.

May 12, 1958.

Rehearing Denied June 11, 1958.

G. H. Kelsoe, Jr., and Johannes & Kelsoe, Dallas, Tex., for appellant.

William N. Hamilton, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

This appeal is from a conviction of conspiring to transport in interstate commerce lewd and obscene motion picture film. 18 U.S.C.A. §§ 371, 1465. There are a number of specifications of error.

The Government was permitted to exhibit to the jury some of the film over the appellant's objection and offer to stipulate that the film was lewd and obscene. This, the appellant says, would tend to arouse the sympathies and prejudices of the jury, so that the admission of the evidence was an error prejudicing his right to a fair and impartial trial. The admission would, to be sure, relieve the Government of its burden of proving the lewd and obscene character of the film. But it does not necessarily follow that the film should have been excluded from the view of the jury. It is a general rule that "A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact." 31 C.J.S. Evidence § 299, p. 1068. The reason for the rule is to permit a party "to present to the jury a picture of the events relied upon. To substitute for such a picture a naked admission might have the effect to rob the evidence of much of its fair and legitimate weight." Dunning v. Maine Central Railroad Co., 91 Me. 87, 39 A. 352, 356, 64 Am.St.Rep. 208. Such rule, we think, should apply in a case such as this where the pictures offered in evidence are of the gist of the offense charged rather than descriptive or illustrative of a scene or an occurrence. Had the question of admissibility been one for the trial court's discretion we would say the discretion had not been abused. See IX Wigmore on Evidence, 3d Ed., p. 589, § 2591.

The appellant made an additional objection to the admission of the films in evidence on the ground that the identification of them was inadequate. It is unnecessary to set forth and analyze the testimony of the several witnesses by which the various films were traced and the appellant identified with them. The testimony was sufficient to identify the films and there was no error in the admission of them.

A number of the films introduced in evidence by the Government were found by F.B.I. Agents at a rural cabin. This cabin was purchased by the appellant and James Ray Williams. Title was in the name of Williams. Prior to the search of the premises it had been leased to George Robert Bly who took possession of it. A search warrant was procured based on information obtained

by Federal officers from Bly. Williams accompanied the officers to the cabin and unlocked it for them. The appellant objected to the admission of the exhibits seized at the cabin on the ground that the search warrant was invalid. In his testimony the appellant stated that the cabin had been turned over to Bly and that appellant had not been up to the cabin. The appellant asserted that the film and photographic equipment in the cabin belonged to Bly. Although the appellant was the owner of a half interest in the property, it had been leased and he did not have possession or the right to possession at the time of the search. Under such circumstances he had no right to complain of a search of the premises. Hardwig v. United States, 6 Cir., 1928, 23 F.2d 922. And where one without possession or a right of possession disclaims any interest in the articles seized he cannot complain of the unlawfulness of the seizure. Lovette v. United States, 5 Cir., 1956, 230 F.2d 263. Since the appellant is not in a position to challenge the search and seizure, we need not consider whether the search was valid nor are we required to determine whether the appellant was relieved of the necessity of filing a pre-trial motion to suppress.

■ The Court gave a rather lengthy charge to the jury but no longer than the nature of the case required. After reciting the substance of the indictment, the Court gave instructions upon the law. About midway in these instructions and following a statement as to the elements of conspiracy, the Court stated:

> "I charge you on the law of principals involved. Whoever directly commits any act constituting an offense defined in any law of the United States or aids, abets, counsels, commands, induces or procures the commission of such offense is a principal. Under the federal law administered in this court, any one aiding and abetting in the commission of an offense is a principal."

This was introductory to the Court's instruction stating that an aider or abettor was an accomplice and outlining the care with which accomplice testimony should be weighed. When the exception to the charge was made the court commented "I am half inclined to agree with you but since we are to charge on accomplices they will better understand the one if the other is given." We think the instruction on the law of principals did not have any application to the case. But the charge of the court must be considered as a whole. Clark v. United States, 5 Cir., 1934, 69 F.2d 258. The appellant urges that this instruction would authorize the jury to convict the appellant of being an aider and abettor, an offense with which he was not charged. We cannot adopt this view. We think, as did the trial court, that the language of which complaint was made is to be regarded as a part of the cautionary charge relating to accomplice testimony. Considering the entire charge we do not find any harmful error. See McNeil v. United States, 1936, 66 App.D.C. 199, 85 F.2d 698.

■ Error is assigned in the refusal of the court to give some of the appellant's requested charges. The court instructed the jury that,

> "The indictment is a charge or accusation which in itself is not proof of the things therein alleged, but undertakes to set forth the things which the government charges the defendant with having done and which the government undertakes to prove."

The court gave a full instruction as to the burden of proof resting upon the government to establish the charges in the indictment beyond a reasonable doubt. The appellant suggests that the jury would infer that the court's instruction indicates that the indictment can be used as evidence if some other evidence is offered to go with it. We think the charge as given is not susceptible to the meaning which the appellant would ascribe to it. There was no error. There is no reason to suppose that the jury be-

lieved it could treat the indictment as anything more than the "charge or accusation" as stated in the court's instruction. See United States v. Martin, 2 Cir., 1955, 223 F.2d 666.

■ The appellant requested the court to give, and asserts that it was reversible error to refuse to give, the following instruction:

"The indictment in this cause is not evidence, it is the charges which the Government must establish by proof to the satisfaction of the jury beyond a reasonable doubt. And until you believe the Government has so established its case, the defendant is entitled to be acquitted."

The court charged that the jury was the sole judge of the facts, that it must weigh the evidence, ascertain where the truth lies, and draw inferences from the evidence and only from the evidence. The court charged that the jury exercised the exclusive function of passing upon the credibility of witnesses. The charge given adequately stated the law and there was no error in refusing to give the requested charge. Ehrlich v. United States, 5 Cir., 1956, 238 F.2d 481.

■ Error is specified in the refusal of the court to charge:

"If, during the trial, from any ruling or other circumstance that has come to your attention, you may have any idea or have reached any conclusion as to what the court thinks about the case, do not be influenced thereby, but base your verdict entirely upon the evidence in the light of the law as given you in this charge, because you and only you are the judges of the fact."

Our review of the record does not disclose any ruling or statement of the court which could be regarded as an expression of "what the court thinks." We find nothing in the record of the trial requiring the requested instruction to be given.

■ The court charged that a criminal conspiracy has its origin in an atmosphere of secrecy as contrasted with the forms of agreement that we habitually use in civil life; that it is an informal understanding or undertaking of two or more persons; and that conspiracy implies concerted design. The appellant had requested, and asserts error because the court declined to give, the following instructions:

"Conspiracy is essentially a crime of intent and to establish criminal conspiracy, corrupt motive or intent must be shown. The mere knowledge, acquiescence or approval of an act without an agreement to cooperate or cooperation of such a nature as not to infer an agreement to participate in a conspiracy, is not enough to constitute a party as a member of the conspiracy."

The language as used by the court to state the nature of conspiracy may be somewhat lacking in unity and precision but is adequate. See Duke v. United States, 5 Cir., 1956, 233 F.2d 897. The instruction given is subject to less criticism than could with propriety be directed to the appellant's proposal.

■ The court's instructions included the following:

"In order for an act to constitute an overt act within the meaning of the indictment it must be some act taken subsequent to the formation of the conspiracy and must be done with an evil intent and fraudulent purpose, and such an act as was intended by the actor to help in accomplishing the purpose of the conspiracy, if any, and must be such an act as is reasonably calculated to accomplish or aid in accomplishing the alleged conspiracy."

The appellant complains because the court did not give this requested charge:

"The fact that each of the several defendants may have acted illegally or maliciously with the same end in view will not establish conspiracy unless it appears that such acts were done pursuant to a mutual agreement."

A defendant is not entitled to select the phrases by which the law of the case

shall be given to the jury. In comparing the last quoted instruction given with the one requested, it would appear that the instruction given was as favorable, perhaps more so, than the one requested. The refusal to give it was not error.

▉ The instructions given included this charge:

"You have noted from the indictment that the government has set forth some overt acts in support of each count of the charge of conspiracy. Now, if you find and believe from the evidence, beyond a reasonable doubt, that the defendants named in the indictment formed the conspiracy alleged and charged, then it is not necessary for the Government to prove all of the overt acts, but if the government proves one of them after the conspiracy is formed it will be sufficient to support a conviction."

No objection was made to the foregoing. The appellant made a request for the following charge:

"Proof of overt acts alone will not warrant a conviction for conspiracy because in order to convict for a conspiracy, there must be competent proof beyond a reasonable doubt of an unlawful agreement between the parties and then the performance of an overt act."

In view of the charge given it was not error to refuse to give the one which was requested.

▉ The statute making illegal the interstate transportation of obscene film became effective June 28, 1955. Evidence was admitted of acts of the appellants and others prior to that date with respect to obscene film. In connection with this phase of the case the jury was instructed:

"Now, in the taking of the evidence in this case some transactions that are in evidence refer back several years. The indictment does not cover those cases, and we give you a charge on that:

"You are instructed that you cannot convict the defendant on evidence concerning a conspiracy, if any, to transport lewd or obscene film in interstate commerce existing prior to June 28, 1955.

"Now, there was evidence admitted here that such transportation was probably going on before June 28, 1955, but that was not to support a conviction under the indictment, but to show a system, if it does, that came on up to the 28th of June, 1955. In other words, if the defendant was engaged in systematically doing something beyond a certain date, the fact that he did it before that date may be shown as part of the system of the operation."

The appellant requested the court to charge:

"You are instructed that the laws of the United States are not ex post facto laws but only operate in the future from their effective date and thus, no law can be applied retroactively in this cause.

"You are instructed that in order to convict the defendant in this cause, your decision must be based on competent evidence beyond a reasonable doubt occurring after June 28, 1955."

So much as was proper in the requested charges was included in the charges which were given.

Although the several objections of the appellant to different portions of the Court's charge have been examined, the objections in the aggregate might, we think, have been disposed of with the observation that the charge as a whole fully and fairly presented the issues. Even though any of the objections had been well taken from a technical viewpoint there would have been no reversible error as no prejudice was or could have been shown. See Patterson v. U. S., 5 Cir., 1951, 192 F.2d 631.

▉ The Government offered and the Court admitted evidence of the making of some of the film and of other related

conduct of Parr or his associates during a period before June 28, 1955, the effective date of the prohibitive statute. This, the appellant contends, was prejudicial error requiring a reversal of his conviction. This view is not sound. It may be shown that a confederation existed and that activity took place pursuant to it during a period before these became illegal. This may be done for the purpose of showing the beginnings of the joint enterprise which later became unlawful. It is permissible to show that a conspiracy had its origin at a time before it became unlawful. Bryant v. United States, 5 Cir., 1919, 257 F. 378; United States v. Randall, 2 Cir., 1944, 140 F.2d 70. And see Christianson v. United States, 8 Cir., 1955, 226 F.2d 646, certiorari denied 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859, where the question was squarely presented.

■ Nor is it error, as appellant insists, for the trial court to admit evidence of conduct of the appellant and his co-conspirators prior to the date laid in the indictment. Such activities for a period reasonably proximate may shed light upon and tend to establish the conspiracy. It is sufficient if the conspiracy is proved to have existed prior to the commission of the overt act or acts charged. Bradford v. United States, 5 Cir., 1907, 152 F. 616, 617, certiorari denied 206 U.S. 563, 27 S.Ct. 795, 51 L.Ed 1190; Pearlman v. United States, 9 Cir., 1927, 20 F.2d 113, certiorari denied 275 U.S. 549, 48 S.Ct. 85, 72 L.Ed. 419; Hood v. United States, 8 Cir., 1927, 23 F.2d 472, certiorari denied 277 U.S. 588, 48 S.Ct. 436, 72 L.Ed. 1002; United States v. Witt, 2 Cir., 1954, 215 F.2d 580, certiorari denied 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697.

■ George Robert Bly was a joint defendant with the appellant Parr in the first count of the indictment. He entered a plea of guilty to this count and to three counts charging offenses of interstate transportation of obscene and lewd film. Bly testified as a witness for the Government on the trial of appellant. The court recessed while Bly was being cross-examined by counsel for appellant. On being recalled the cross-examination continued. The record shows that the following transpired:

"Q. [By counsel for appellant] Mr. Bly, you have been charged in the indictment here with an act of conspiracy with Wyman Parr, had you not? A. Yes.

"Q. And isn't it a fact that you haven't plead guilty to that particular count of the indictment? A. No, sir.

"Q. That is not true? A. No, sir, I have not plead guilty to that particular count.

"Q. Then the reason you haven't plead guilty to it is because you believe you are not guilty?"

Upon this happening, the District Attorney, in the presence of the jury, made the following statement:

"Mr. Hamilton [United States Attorney]: It was my opinion that he had plead guilty to the overt act (all counts in the indictment).

"The Court: The Court has entered a plea of guilty and the witness, as I understand, plead guilty to the charges in the indictment.

"Mr. Hamilton: That was my understanding.

"The Court: If he has not plead guilty, then I think we should grant a severance and try the case over.

"A. May I speak?

"Mr. Hamilton: Yes.

"Mr. Kelsoe [Counsel for appellant]: I think this is a matter you ought to talk about in private.

"Mr. Hamilton: It is my understanding that the witness plead guilty.

"The Court: That was the court's understanding.

"Mr. Hamilton: His attorney is present here; if he wants to discuss the matter.

"The Court: What is your view, as his attorney?

"Mr. Alexander [Attorney for witness Bly]: He has entered a plea of guilty on all counts and he waived his right to a trial with a jury and entered his plea before the court and my understanding was the court accepted the plea.

"The Court: He did plead guilty to all counts.

"Mr. Alexander: Yes, Your Honor.

"The Court: That is the Court's record on the matter. When did you make up your mind to testify you didn't plead guilty to all counts? A. If I may clarify myself: When it was brought out by counsel that I had plead guilty to this particular count, I was not aware that—I was aware that I had plead guilty to all counts—but I didn't know I was pleading guilty to each individual count. The conspiracy thing was the one in my mind, I plead guilty to all counts against me, yes, sir.

"The Court: You are an intelligent man, and you are represented by a capable lawyer, and you are guilty of contempt of this Court. A. I am sorry, sir.

"The Court: You may examine him further, if you wish, before we enforce any penalties on him for contempt."

The cross-examination continued. No motion was made requesting that the court declare a mistrial. There was no request that the jury be requested to disregard the incident. The appellant here asserts that it was error for the court to conduct a contempt hearing against the witness Bly in the presence of the jury. Under this specification, we can hardly say in support of it, the appellant cites precedents holding it to be error for the court or prosecutor to bring before the jury the fact that another involved in the offense charged has entered a plea of guilty. Payton v. United States, 1955, 96 U.S.App.D.C. 1, 222 F.2d 794; United States v. Toner, 3 Cir., 1949, 173 F.2d 140; United States v. Hall, 2 Cir., 1950, 178 F.2d 853. In the case before us, unlike the cases appellant cites, it was the appellant who had opened the question of the plea of Bly. We think it was proper for court and prosecutor to keep straight the record of the plea of guilty which Bly had entered in the very case which was on trial. There can be no benefit to an appellant by reason of an error which his conduct induced or which he invited. I Wigmore on Evidence, 3d Ed. 344, § 18(D). It was then no error to show that Bly had entered a plea of guilty. The appellant could not have been hurt by a statement that Bly, the most important of the Government's witnesses, was in contempt.

 Finally, the appellant contends the evidence is insufficient to support the conviction. We need not comment upon the evidence which was brought forward by the Government. It was sufficient to support the verdict of guilty.

No reversible error is shown. The judgment of the district court is

Affirmed.