553 A.2d 1268

ALLSTATE INSURANCE COMPANY

v.

Mary Colleen MILLER.

No. 41, Sept. Term 1987.

Court of Appeals of Maryland.

March 2, 1989.

Don F. Ryder, Jr. (Schroeder, Ryder & Braden on the brief), Rockville, for appellant.

Ronald G. Kronthal (Gimmel, Weiman & Savits, P.A., on the brief), Gaithersburg, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

BLACKWELL, Judge.

This automobile insurance case presents two issues. First, we consider whether the circuit court erred by declaring a motorist uninsured as a matter of law under the instant facts. Second, we consider whether that court erred in failing to correct a judgment where the verdict against an insurance company exceeded its uninsured motorist policy limits.

## I.

Mary Colleen Miller (Miller) was a passenger in her employer's vehicle when she sustained injuries in a two-car collision. Gregory Dean Sowell (Sowell), the other driver, allegedly caused the accident. Through Allstate Insurance Company (Allstate), Miller's employer had a policy which covered any passenger injured by an uninsured motorist.[1]

Miller sued Sowell and Allstate in the Circuit Court for Montgomery County. Miller alleged negligence against Sowell, and in a breach of contract count sought damages against Allstate under the terms of the uninsured motorist provision of the policy in question. Prior to trial, an order of default was entered against Sowell, leaving two issues unresolved: whether Sowell was uninsured, and secondly, the amount of damages that plaintiff was entitled to recover. The second issue, of course, had two aspects: the damages to which Miller was entitled by reason of Sowell's negligence, and the amount owed Miller by Allstate by reason of the insurance contract. At the conclusion of testimony, the court granted Miller's motion that the jury be instructed that Sowell was an uninsured motorist as a matter of law. The court also granted Miller's motion on the issue of liability as to Allstate.

The circuit court's instructions directed the jury to only consider the issue of the plaintiff's damages. The jury was directed to consider the elements of damage that typically are involved in a tort case. What was before the jury was

---

1. Maryland Code (1957, 1986 Repl.Vol.), Article 48A, § 541(c) requires:

(c) Uninsured motorist coverage—

\* \* \* \* \* \*

(2) In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle....

the damages, if any, arising from the tort action of *Miller v. Sowell*, Sowell's liability having been determined by the order of default. Md. Rules 2–613(a) and (e). After a bench conference, the court emphasized that the jury was "to bring back one verdict, one amount of money, and not speculate as regards [to] any disbursement between Sowell ... and Allstate Insurance Company." Neither party excepted to this instruction.[2]

The jury returned a verdict in favor of Miller in the amount of $120,000, although the policy only covered $50,000 of that amount in uninsured motorist coverage. The declarations page of the policy was not offered in evidence by either party. Allstate timely filed post judgment motions, which were summarily denied.

On appeal, Allstate contended the jury instructions improperly indicated that Sowell was an uninsured motorist as a matter of law. Furthermore, the insurer argued that the court erred in denying the post-trial motions where the verdict exceeded the policy limitation. In an unreported *per curiam* opinion, the Court of Special Appeals affirmed on both issues. The court observed that Allstate had made a tactical decision not to establish its policy limit before the

---

**2.** The following bench conference preceded the court's final instruction:

The Court: Is the Plaintiff satisfied?

Mr. Kronthal: Your Honor, generally I am. The only thing I think I would like the court to point out—perhaps, and I think it will help the jury—is the amount of the damages that are awarded by the jury in this case should be consistent as between Sowell, and Allstate Insurance Company. They should [not] be allowed, nor should they expect to come in and give a judgment for say, $50,000, or $500 against Sowell, and $50,000 against Allstate. I just think that they should know that it should be a consistent verdict.

The Court: What is your thought on that?

Mr. Ryder: That might be good to tell them that, your Honor, because they might return two verdicts in the case.

The Court: Suppose I tell them, simply, that they should return one verdict, and without regard to whether it will be assessable as to Allstate or as to Sowell, is that all right.

Mr. Ryder: That is fine.

Mr. Kronthal: All right.

jury; the company would have to bear the consequences of that decision.

We conclude the trial court properly instructed the jury that Sowell was an uninsured motorist as a matter of law. However, we find that the trial court should have reduced the amount of the judgment against Allstate in keeping with the contractual limitation of the policy.

## II. *Uninsured Motorist as a Matter of Law*

■ Allstate contends that Sowell was not an uninsured motorist as a matter of law because the facts supporting this interpretation were not uncontroverted. We disagree.

"A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." Md. Rule 2–519(a). Upon such a motion, the court must consider the evidence in a light most favorable to the nonmoving party and interpret every reasonable inference in its favor. *DeBleecker v. Montgomery County*, 292 Md. 498, 510, 438 A.2d 1348, 1355 (1982); *Impala Platinum v. Impala Sales*, 283 Md. 296, 328, 389 A.2d 887, 905–06 (1978). The court should not grant a judgment in favor of the moving party on any issue for which that party bears the burden of proof except when (1) the facts are uncontroverted or (2) the parties have agreed to the facts. *University Nat'l Bank v. Wolfe*, 279 Md. 512, 525, 369 A.2d 570, 577 (1977); *Alexander v. Tingle*, 181 Md. 464, 470, 30 A.2d 737, 740 (1943). In order "for evidentiary facts and inferences to be 'uncontroverted or undisputed,' there must be either actual or constructive acquiescence in their truth on the part of all affected parties." *University Nat'l Bank*, 279 Md. at 525, 369 A.2d at 577–78 (quoting *Peroti v. Williams*, 258 Md. 663, 669, 267 A.2d 114, 118 (1970)). While a jury must accept uncontroverted evidence as a matter of law, the jury may disbelieve uncontradicted evidence. *Id.* at 525, 369 A.2d at 577.

Miller produced the following evidence at trial to prove that the defendant driver was an uninsured motorist. Leno-

ra Eileen Sowell (Mrs. Sowell) testified that she owned the car which her husband was driving at the time of the collision. The car was not insured. Moreover, to the best of her knowledge, her husband had no other type of insurance coverage which would provide for damages arising from the accident.

Charles Pacholkiw, a representative of Nationwide Insurance Company, testified that he had sold automobile insurance to Mrs. Sowell for the car in question; however he also produced a "Notice of Cancellation" of insurance, which was admitted into evidence. That notice had been mailed to Mrs. Sowell and stated that her policy had been terminated on January 5, 1983 for nonpayment of the premium. The accident occurred on January 29, 1983.

Deborah Ritter (Ritter), a casualty claims adjuster for Allstate, investigated Miller's accident and testified that she received a letter from Nationwide Insurance. The letter, which was admitted into evidence, stated that Sowell was uninsured at the time of the accident. Ritter also testified that she knew of no other efforts made by Allstate to ascertain whether Sowell or the vehicle he was driving had insurance at the time of the accident.

Stephen Leslie Kind, the driver of the vehicle in which Miller rode, stated that he had obtained the name of Sowell's insurance agent as well as their policy number from the Department of Motor Vehicles; the agent informed him that Sowell's policy had lapsed.[3]

Finally, records from the Maryland Department of Transportation were introduced into evidence. These records indicated that the Sowells were the owners of the car that had collided with Miller and Kind's vehicle and that the vehicle's insurance was cancelled on January 5, 1983.

---

**3.** Mr. Kind testified by way of a deposition which was read into the record.

Although Allstate denied liability, the company offered no evidence to prove that Sowell had insurance at the time of the accident.[4] Nor did Allstate offer evidence to impeach Miller's witnesses or to contradict Miller's evidence. During a bench conference at trial, the judge asked counsel for Allstate, "What evidence is there that you can point to that there was any insurance, other than a vague hope that somebody might think that he was insured?" Counsel for Allstate responded, "None, your Honor, except for the fact that he very well could have had a personal policy."

Where a plaintiff provides extensive evidence that a motorist is uninsured and the plaintiff's carrier makes no attempt to rebut that evidence or to prove that the motorist was insured, the court should, upon proper motion, rule that the motorist was uninsured as a matter of law. In essence, the plaintiff's uncontradicted evidence becomes uncontroverted on the basis of the plaintiff's thorough documentation and the defendant's complete inaction. The mere suggestion by the carrier that the motorist might have had a "personal policy" is not sufficient to prevent the court from reaching this conclusion.

In reviewing the evidence presented in a light most favorable to Allstate, we conclude that the facts concerning Sowell's status as an uninsured motorist are uncontroverted. We agree with the Court of Special Appeals that the trial court properly instructed the jury that Sowell was an uninsured motorist as a matter of law.

### III. *Correct Entry of Judgment*

The descriptive title which Allstate placed on its post judgment motion was "MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO, OR IN THE ALTERNATIVE, A NEW TRIAL OR A REMITTITUR." That motion raised several grounds. Allstate's motion was filed within ten

---

4. Sowell did not testify at trial.

days of the entry of judgment.[5] Under former Md. Rule 1012(d) (now Rule 8–202(c)) it operated to extend the time for noting an appeal until thirty days after its denial.

■ Allstate's post judgment motion included the assertion that the trial court had "erred in permitting the jury to return a verdict against this defendant in excess of the limit set forth in said insurance policy." This ground of the motion sought a reduction of the judgment entered on the count of Miller's complaint sounding in contract. Under Md. Rule 2–532(a), a motion for judgment notwithstanding the verdict does not lie because Allstate had not moved for a judgment at the close of all of the evidence on the issue that Allstate had no liability for any amount in excess of the limits of uninsured motorist coverage. *Cf.* Md. Rule 2–519(a) ("A party may move for judgment on any or all of the issues ... in a jury trial at the close of all the evidence."). Nevertheless, Allstate's motion sought a revision of the judgment and was sufficient to invoke the court's revisory power under Md. Rule 2–535(a).[6] Allstate attached the portion of the policy setting out the policy limits to its motion for reconsideration of the denial of the post judgment motion. That reconsideration was denied before the order for appeal was filed.

Because judgment on the contract claim exceeding the $50,000 limit in the policy was erroneous as a matter of law, the circuit court erred in failing to revise the judgment. Review of the denial of revision is available on this timely appeal from the judgment.

---

5. The docket entries indicate that the judgment was entered as of February 26, 1986. Allstate's post-trial motion was filed on March 7, 1986.

6. Md. Rule 2–535(a) provides in pertinent part: "[o]n motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment...." Possible grounds for the motion "include such arguments as error of law, fraud, or newly-discovered evidence." P. Niemeyer & L. Richards, *Maryland Rules Commentary* 323 (1984).

 Allstate argues that a jury verdict against an insurer which exceeds its uninsured third party policy limits should be reduced by the trial judge to the amount of the contractual coverage. Miller responds that Allstate had the burden of establishing and proving the parameters of its liability to the jury; having chosen not to enter the policy limits into evidence at trial, the insurer cannot offer that evidence for the first time in a post-trial motion. That argument might be persuasive had this case gone to the jury on the contract claim against Allstate. But, as we have seen, what actually went to the jury was the question of damages arising from the tort claim of Miller against Sowell. We are dealing with what was functionally presented to the jury as a tort case.

Miller relies on *Williams v. Bernard,* 413 So.2d 198 (La.App.1982), *aff'd,* 425 So.2d 719 (La.1983). In *Williams,* the intermediate appellate court upheld an $8,000 jury verdict for the plaintiff where the insurance company did not establish the $5,000 ceiling on its uninsured motorist provision. The intermediate appellate court stated:

> It is clear from this exchange that plaintiff met the burden of establishing uninsured motorist coverage. Despite this stipulation, no mention was made of the $5,000.00 limitation and it was not brought to the jury's attention. Once coverage is established, it then becomes incumbent upon defendant either to offer evidence of the limit of the amount of coverage or to stipulate the limit. Defendant failed to carry this burden. The jury's failure to be aware of the policy limit was attributable to defendant. After coverage has been stipulated, an insurer cannot remain silent on extent of coverage and then complain when a jury awards an amount in excess of the policy limit.

413 So.2d at 200.[7] We decline to follow the reasoning of the Louisiana court. It is evident that Louisiana has merged

---

7. In affirming the verdict, the Supreme Court of Louisiana reasoned: "Allstate's trial attorney deliberately chose to withhold evidence of the

the concepts of direct action against an insurance company with that of contractual liability in the context of an uninsured motorist case. We are unpersuaded by *Williams* for the reasons set forth below.

In keeping with the majority rule, Maryland generally holds that evidence of a defendant's insurance is inadmissible to show fault or lack thereof.[8] *Jones v. Federal Paper Bd. Co.*, 252 Md. 475, 494, 250 A.2d 653, 664 (1969); *Takoma Park Bank v. Abbott*, 179 Md. 249, 263, 19 A.2d 169, 176, *cert. denied*, 314 U.S. 672, 62 S.Ct. 134, 86 L.Ed. 538 (1941). *Cf. Association of Indep. Taxi Operators, Inc. v. Kern*, 178 Md. 252, 260, 13 A.2d 374, 377 (1940). *See also McCormick on Evidence* § 201, at 593 (E. Cleary 3d ed. 1984). Where the insurance carrier is a party to the suit, the existence of insurance obviously cannot be kept from the jury; however the amount of uninsured motorist coverage should not be disclosed, unless the amount is in controversy.[9]

The rationale for this approach is that the coverage amount has no relevant bearing upon the jury's considera-

---

policy limits as a trial tactic to avoid the possibility that the jury's determination of liability or quantum would be influenced by its knowledge of the amount of coverage." 425 So.2d at 723.

**8.** Evidence of insurance is admissible when offered for other purposes, such as proof of agency; *see Keitz v. Nat'l Paving & Contracting Co.*, 214 Md. 479, 494, 134 A.2d 296, 303 (1957) (holding evidence that defendant had insurance on his truck admissible for limited purpose of showing relationship between truck driver and second company's servants), *opinion on reh'g*, 214 Md. 496, 136 A.2d 229 (1957); ownership; *see Kirsch v. Ford*, 170 Md. 90, 95, 183 A. 240, 241–42 (1936) (allowing insurance agent to testify that he had insured all three defendants for the limited purpose of showing proof of ownership); or control. *See Snowhite v. State Use of Tennant*, 243 Md. 291, 304, 221 A.2d 342, 349 (1966) (upholding admission of evidence of insurance to show control over driver).

**9.** While a party to a civil action may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business might be liable to satisfy part or all of a judgment, "[i]nformation concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial." Md. Rule 2–402(b).

tion of the issue of damages. Moreover, establishing the availability of a sum certain is likely to distort a jury verdict. *See generally International Co. v. Clark,* 147 Md. 34, 42, 127 A. 647, 650 (1925).[10] The jury's knowledge of the available policy limits can work to the disadvantage of either party depending on the circumstances of the case.

■ All of this is perfectly sound tort law, and we apply it here because what the jury was directed to consider, and all the jury was directed to consider, was the issue of damages. In this posture of the case, and under these circumstances, rather than require a party to establish uninsured motorist policy limits as an affirmative defense or as a limitation of exposure, the better rule is to allow the jury to make its decision on the issue of damages without being informed of the amount of coverage available. Therefore, the admission of uninsured motorist coverage amounts should not be a tactical decision left to the parties' discretion. The fact of the limit of uninsured motorist coverage is irrelevant to the issue of the amount of tort damages. Here, no jury issue was presented concerning the $50,000 uninsured motorist coverage. Both the parties and the court were aware of the insurance policy limits.[11] Under these circumstances, the jury's verdict should not have been influenced by extraneous factors such

---

**10.** In *International Co. v. Clark,* we noted the following:

If the defendant, engaging servants to drive automobiles, and knowing the frequency of accidents, has had the foresight and prudence to insure itself against loss or liability resulting from accident, this fact has nothing whatever to do with the merits of the suit being tried, and is wholly irrelevant and immaterial to the issue, and could only have the effect of prejudicing the jury in their verdict, either as to the finding for the plaintiff or the amount of damages which they might assess.

*Id.* at 42, 127 A. at 650.

**11.** Allstate's counsel attached the declarations page of the insurance policy in the motion for reconsideration as "Exhibit A." The $50,000 uninsured motorist policy limit was also revealed in defendant's answer to plaintiff's interrogatory No. 10. We are unpersuaded by Miller's argument that the failure of Allstate to enter the declarations page into evidence is fatal.

as the prospect of recovery or of the availability of a specific sum of uninsured motorist coverage.

If the verdict exceeds the coverage amount, the trial court should then reduce the verdict, upon proper post-trial motion, to comply with the limits of the policy. In the present case, Allstate's filing of the Motion for Judgment Notwithstanding the Verdict pursuant to Md. Rule 2–532 was a proper vehicle for the trial judge to correct the erroneous judgment.[12]

The trial court erred in denying the motion to reduce the verdict against Allstate so as to comply with the contractual limitations of the insurance policy.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT TO DIRECT JUDGMENT AGAINST ALLSTATE IN THE AMOUNT OF $50,000. THE TOTAL VERDICT OF $120,-000 SHOULD NOT BE ALTERED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.

---

12. We do not mean to imply that Md. Rule 2–532 was the only means for achieving this result. As examples, the issue of the $50,000 uninsured motorist coverage as a limit to Allstate's liability could have been resolved prior to trial by stipulation, or through a motion in limine.